IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2010 OCT 15  PM 2: 30

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

| | | |
|---|---|---|
| CINDY WHITFIELD | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION N**A 10 CA  769 SS** |
| VS. | § | |
| | § | |
| BAYER CORPORATION;  BAYER | § | |
| HEALTHCARE, LLC; BAYER | § | |
| PHARMACEUTICALS CORPORATION; | § | |
| BAYER HEALTHCARE | § | JURY DEMAND |
| PHARMACEUTICALS, INC.,  f\k\a | § | |
| BERLEX LABORATORIES, INC., f\k\a | § | |
| BERLEX, INC.; and BAYER | § | |
| SCHERING PHARMA AG f\k\a | § | |
| SCHERING AG | § | |
| Defendants | § | |

## ORIGINAL COMPLAINT

Now comes Plaintiff Cindy Whitfield complaining of Defendants Bayer Corporation; Bayer Healthcare, LLC; Bayer Pharmaceuticals Corporation; Bayer Healthcare Pharmaceuticals, Inc. formerly known as Berlex Laboratories, Inc. formerly known as Berlex, Inc.; and Bayer Schering Pharma AG, formerly known as Schering AG.

## I.  THE PARTIES

1.      Plaintiff Cindy Whitfield is a citizen of the State of Texas, residing at 2511 Sailpoint Drive, Spicewood, Texas 78669.

2.      Defendant Bayer Corporation is, and at times relevant was, a corporation organized under the laws of the State of Indiana with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  At all times relevant, Defendant Bayer Corporation was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce,

1

either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive Yasmin and YAZ. This Defendant can be served with citation by serving its registered agent Corporation Service Company d\b\a CSC-Lawyers Incorporating Service Company at 211 East 7th Street, #620, Austin, Texas 78701.

3.    Defendant Bayer Healthcare, LLC, is, and at times relevant was, a limited liability corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. At all times relevant, Defendant Bayer Healthcare, LLC was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Defendant Bayer Healthcare, LLC is wholly owned by Defendant Bayer Corporation. This Defendant can be served with citation by serving its registered agent Corporation Service Company d\b\a CSC-Lawyers Incorporating Service Company at 211 East 7th Street, #620, Austin, Texas 78701.

4.    Defendant Bayer Pharmaceuticals Corporation is, and at times relevant was, a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 400 Morgan Lane, West Haven, Connecticut 06516. At all times relevant, Defendant Bayer Pharmaceuticals Corporation was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive Yasmin and YAZ. As of January 1, 2008, Defendant Bayer Pharmaceuticals Corporation was merged into Defendant Bayer Healthcare Pharmaceuticals, Inc. This Defendant can be served with citation by serving its registered agent Corporation Service

Company d\b\a CSC-Lawyers Incorporating Service Company at 211 East 7th Street, #620, Austin, Texas 78701.

5.      Defendant Bayer Healthcare Pharmaceuticals, Inc., is and at times relevant was, a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 340 Changebridge Road, P.O. Box 1000, Montville, New Jersey 07045-1000.  Defendant Bayer Healthcare Pharmaceuticals, Inc. was formerly known as Berlex, Inc., which was formerly known as Berlex Laboratories, Inc., and is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc. At all times relevant, Bayer Healthcare Pharmaceuticals, Inc. was engaged in the business of developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ.  Defendant Bayer Healthcare Pharmaceuticals, Inc. applied for and received U.S. marketing approval for Yasmin and YAZ by the FDA, and is the holder of approved New Drug Application ("NDA") for Yasmin and YAZ.  This Defendant can be served with citation by serving its registered agent Bayer Healthcare Pharmaceuticals, Inc.  This Defendant was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc.  At all times relevant these entities were foreign corporations with their headquarters and principal places of business at Montville, New Jersey and with a post office address of P.O. Box 1000, Montville, New Jersey 07045 and places of business located at 6 West Belt Road, Wayne, New Jersey 07470.  Berlex Laboratories, Inc. and Berlex, Inc. were integrated into Bayer Healthcare AG and operates as an integrated specialty pharmaceuticals business under the new name, Defendant Bayer Healthcare Pharmaceuticals, Inc.  At all times relevant, Defendants Berlex Laboratories, Inc. and Berlex, Inc. were engaged in the business of developing, designing,

licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties, subsidiaries or related entities, the oral contraceptive, Yasmin and YAZ. This Defendant can be served with citation by serving its registered agent Corporation Service Company d\b\a CSC-Lawyers Incorporating Service Company at 211 East 7th Street, #620, Austin, Texas 78701.

6.      Defendant Bayer Schering Pharma AG, formerly known as Schering AG, manufactured the drospirenone and ethinyl estradiol utilized in Yasmin and YAZ. The Defendant can be served with process by serving Eva Gardyan-Eisenlohr, head of law patents, Bayer  Schering Pharma AG, Müllerstrasse 178, D-13353 Berlin Germany by certified, return receipt requested or express mail.

7.      Defendants Bayer Corporation; Bayer Healthcare, LLC; Bayer Pharmaceuticals Corporation, Bayer Healthcare Pharmaceuticals, Inc.,   f\k\a Berlex Laboratories, Inc. f\k\a Berlex, Inc.; and Bayer Schering Pharma AG, f\k\a Schering AG, shall be referred to herein individually by name or jointly as "Defendants."

## II.  JURISDICTION AND VENUE

8.      There is complete diversity in this suit between citizens of different States. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. The United States District Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

9.      A substantial part of the events or omissions giving rise to this claim occurred in the Western District of Texas, Austin Division. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a).

### III. NATURE OF THIS ACTION

10.     This is an action for strict product liability, fraudulent misrepresentation, negligence, and gross negligence brought by Plaintiff for damages associated with her ingestion of the pharmaceutical drug Yasmin and/or YAZ, an oral contraceptive developed, designed, licensed, manufactured, distributed, sold, and/or marketed by Defendants.  Yasmin and/or YAZ may be referred to here as "the product."

11.     As a result of the ingestion of the product, Plaintiff has suffered injuries to her person including, but not limited to, a severe gallbladder attack requiring emergency gallbladder removal which consequently places her at risk for an increased variety of liver and kidney ailments.

### IV.  FACTUAL BACKGROUND

**A.  PRODUCT HISTORY**

12.     Yasmin (a predecessor to YAZ), known generically as drospirenone and ethinyl estradiol, is a combination birth control pill originally developed by Defendant Berlex Laboratories, Inc. and/or Defendant Berlex, Inc. containing the hormones estrogen and progestin.

13.     The estrogen in ethinyl estradiol and the progestin is drospirenone (3 mg. of drospirenone and 0.03 mg. of ethinyl estradiol per tablet).  Combination birth control pills are referred to as combined hormonal oral contraceptives.

14.     Yasmin was approved by the FDA in April, 2001.

15.     In 2006, Bayer acquired Defendant Berlex Laboratories, Inc. and/or Defendant Berlex, Inc., and began marketing an almost identical drug YAZ (which contains 3 mg. of drospirenone and 0.02 mg. of ethinyl estradiol per tablet).

5

16.     The difference between Yasmin/YAZ and other birth control pills on the market is that drospirenone has never before been marketed in the United States and is unlike other progestins available in the United States.

17.     Shortly after the introduction of combined oral contraceptives in the 1960s, doctors and researchers found that women using birth control pills had a higher risk of blood clots, heart attacks and strokes than women not using the pill.  As a result, the various brands of birth control pills were reformulated to reduce the amounts of estrogen.  As the amounts of estrogen levels reduced, so too did the risk of blood clots, heart attacks and strokes.

18.     During this time, new progestins were being developed, which became known as "second generation" progestins (e.g., lovenorgestrel).  These second generation progestins, when combined with the lower amounts of the estrogen, ethinyl estradiol, helped to reduce the risk of blood clots, heart attacks and strokes and were considered safer for women.

19.     During the 1990s, new "third generation" progestins were developed. Unfortunately, these "third generation" progestins (e.g., gestodene and desogestrel) have been associated with a greater risk of blood clots in the deep veins (deep vein thrombosis or "DVT") lungs (pulmonary embolism or "PE").  As a result of this increased risk of blood clots, the FDA has required that products containing third generation progestins include a warning of the potentially increased risk of thrombosis.

20.     Yasmin and YAZ contain the same estrogen component, ethinyl estradiol, that has been used in the lower dose birth control pills for decades.  However, drospirenone is a new type of progestin and is considered a "fourth generation" progestin.  No other birth control pills contain drospirenone, except for a recently approved generic version of Yasmin and YAZ marketed under the trade name, Ocella.

21.     Since drospirenone in birth control is new, there are not decades of data available to support its safe use as there are with second generation progestins.  Studies that were done prior to FDA approval, however, indicate that drospirenone has certain effects that are different from those of traditional second generation progestins, and potentially more dangerous.  Among other things, drospirenone has been associated with a greater risk of gallbladder disease.   As such, possible side effect of Yasmin and YAZ is a substantially increased risk of gallbladder complications and gallbladder disease.

22.     During the brief time that Yasmin and YAZ have been sold in the United States, hundreds of reports of injury and death have been submitted to the FDA in association with Defendants' products, including reports of gallbladder disease.  The number of adverse events reported to the FDA appears disproportionately higher for Yasmin and YAZ than for other birth control pills.

23.     Defendants market Yasmin and YAZ as providing the same efficacy as other birth control pills in preventing pregnancy, but with additional benefits.  However, because Yasmin and YAZ contain the fourth generation progestin drospirenone, they present additional health risks not associated with other birth control pills.

24.     Defendants have been warned at least three times by the FDA; in 2003, 2008 and 2009, for misleading the public through the use of ads which overstate the efficacy of YAZ and/or its predecessor Yasmin, and minimize serious risks associated with the drug.  Indeed, the FDA felt Defendants' over-promotion of YAZ was so severe that it required Bayer to run new TV advertisements to correct the previous misleading YAZ advertisements.  Bayer ultimately agreed to spend millions of dollars on corrective TV advertisements and to submit all YAZ advertisements to the FDA for advanced screening for the next six years.

25.     Defendants ignored the correlation between the use of Yasmin and YAZ and increased risk of gallbladder complications and gallbladder disease despite scientific information available.  Upon information and belief, Defendants knew or should have known about the correlation between the use of Yasmin and YAZ and increased risk of gallbladder complications and gallbladder disease and still promoted, sold, advertised, and marketed the use of Yasmin and YAZ. Defendants falsely and fraudulently represented to the medical and healthcare community, to Plaintiff and his daughter, the FDA, and the public in general, that Yasmin and YAZ had been tested and was found to be safe and/or effective for its indicated use.

26.     These false representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, dispense and/or purchase Yasmin and YAZ for use as a contraceptive, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

27.     Defendants knew and were aware or should have been aware that Yasmin and YAZ had not been sufficiently tested, was defective in its design and testing, and/or lacked adequate and/or sufficient warnings.

28.     Defendants know or should have known that Yasmin and YAZ had a potential to, could, and would cause severe and grievous injury and death to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate and/or down-played warnings.

29.     In representations to Plaintiff, her healthcare providers, and/or the FDA, Defendants also fraudulently concealed and intentionally omitted the following material information:

        a.     That Yasmin/YAZ is not as safe as other available contraceptives;

        b.     That the risks of adverse events with Yasmin/YAZ (drospirenone and ethinyl estradiol) was higher than those of other available contraceptives;

        c.     That the risks of adverse events with Yasmin/YAZ was not adequately tested and/or known by Defendants;

        d.     Plaintiff was put at risk of experiencing serious and dangerous side effects including, but not limited to, a severe gallbladder attack requiring emergency gallbladder removal and, as a result, put her at increased risk of variety of liver and kidney ailments, as well as other severe and personal injuries, physical pain, and mental anguish;

        e.     That patients needed to be monitored more regularly than normal while using Yasmin/YAZ; and/or

        f.     That Yasmin/YAZ was designed, tested, manufactured, marketed, produced, distributed and advertised negligently, defectively, fraudulently and improperly.

30.     Defendants were under a duty to disclose to Plaintiff, and her physicians, hospitals, healthcare providers and/or the FDA the defective nature of Yasmin and YAZ.

31.     Defendants had sole access to material facts concerning the defective nature of the produce and its propensity to cause serious and dangerous side effects, and hence, cause damage to person who used Yasmin and YAZ, including Plaintiff.

32.     Defendants made the misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ with the intention and specific desire that

the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, would rely on such in selecting Yasmin and YAZ as a contraceptive. Defendants made these misrepresentations and/or actively concealed information concerning the safety and efficacy of Yasmin and YAZ in their labeling, advertising, product inserts, promotional material or other marketing efforts.    The misrepresentations of and/or active concealment by Defendants were perpetuated directly and/or indirectly by Defendants, its sales representative, employees, distributors, agents and/or detail persons.    Defendants knew that Plaintiff, her healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Yasmin and YAZ, as set forth herein.

33.    The misrepresentations of and/or active concealment by Defendants constitute a continuing tort.    Indeed, through Defendants' product inserts, Defendants continue to misrepresent the potential risks and serious side effects associated with the use of Yasmin and YAZ.

34.    Moreover, Defendants had a post-sale duty to warn the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, about the potential risks and serious side effects associated with the use of Yasmin in a timely manner, yet they failed to provide such warning.

**B.  CASE HISTORY**

35.    Plaintiff was born on May 23, 1966.  Plaintiff was prescribed Yasmin and/or YAZ by her healthcare provider in approximately 2001 because of menstrual problems.    Plaintiff justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants to purchase and for Plaintiff to ingest YAZ and/or Yasmin to her detriment.

36.     In the fall of 2008, Plaintiff suffered serious abdominal pain, culminating in a gallbladder.   On November 5, 2008, Plaintiff underwent emergency surgery to remove her gallbladder, requiring a lengthy hospital stay in Austin, Texas.   As a result of her use of Yasmin and/or YAZ, Plaintiff suffered serious and life-threatening side effects, including but not limited to, a severe gallbladder attack requiring emergency gallbladder removal, as well as other severe and personal injuries, including lack of gallbladder and increased risk of future kidney and liver ailments, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

37.     Plaintiff did not discover, nor did she have any reason to discover, that Plaintiff's injury was a result of a defective drug and/or the wrongful conduct of Defendants, as set forth herein, until at recently.  Plaintiff could not have discovered, through the exercise of reasonable care, the concealed cause of action against the Defendants until that time.

38.     The Defendants had actual knowledge of the danger of their product and used deception to conceal the fraud to disclose vital information about its product, Yasmin and/or YAZ.  Defendants concealed the fraud with the intent to induce the Plaintiff to continue her use of YAZ and/or Yasmin.   Plaintiff reasonably relied on the Defendants' material misrepresentation and fraudulent concealments, and continued to use YAZ and/or Yasmin, to her detriment.  As a direct and proximate result of the Defendants' fraudulent concealment, Plaintiff suffered actual damages.

## V. CAUSES OF ACTION

### A. PRODUCT LIABILITY

39.     The drug in question was designed, manufactured, and/or marketed by Defendants.

a.      It was in a defective condition and was unreasonably dangerous due to defects in its design, manufacture, and marketing.

b.      These defects existed at the time that the drug product left the Defendants' control.

c.       The drug reached the ultimate end-users without substantial change in the condition in which it was sold, and the drug was being used in an intended, foreseeable manner at the time of the occurrence.

d.      These defects were each a producing cause of the Plaintiff's injuries and damages; therefore, the Defendant is strictly liable to the Plaintiff under § 402(A) of the *Restatement (Second) of Torts*, the common law of the State of Texas, and the Texas Civil Practice and Remedies Code § 82.

40.     With regard to the defective design:

a.      The drug in question was unreasonably dangerous as designed taking into consideration the utility of the product and the risk involved in its use.

b.      In accordance with Texas Civil Practice and Remedies Code §82.005, one or more safer, alternative designs were in existence at the time that this drug was made and sold.

c.       These safer, alternative designs would, in reasonable probability, have prevented or significantly reduced the risk of the Plaintiff's injuries without substantially impairing the product's utility.

d.       These alternative designs were economically and technologically feasible at the time the product left the Defendants' control by the application of existing or reasonably achievable scientific knowledge.

e.       The drug's defective design was a producing cause of the occurrence in question and Plaintiffs' injuries and damages.

41.      With regard to the manufacturing defect:

a.       The drug product was dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

b.       This defect was present at the time that the product left the Defendants' possession, and it was a producing cause of the occurrence in question and Plaintiff's injuries and damages.

42.      With regard to the marketing defect:

a.       The drug product in question was marketed without adequate warnings of the product's dangers that were known or, by the application of reasonably developed human skill and foresight, should have been known and without adequate instructions to avoid such dangers.   Such marketing defect includes the Defendants' failure to apprise adequately Plaintiff Cindy Whitfield, or her physicians of the risk of serious injury, including but not limited to gallbladder complications and disease.

b.      Those warnings and instructions which were imparted were inadequate in that they were not given in a form that could reasonably be expected to catch the attention of a reasonably prudent physician in the circumstances of prescribing the product's use; the content of the warning and instructions were not comprehensive to such physician; and they did not convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent physician.

c.      This marketing defect rendered the product dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the knowledge common to the community as to the product's characteristics or the ordinary physician prescribing the product.

d.      Such defect was a producing cause of the occurrence in question and Plaintiff's injuries and damages.

## B.  MISPREPESENTATION

43.     The Defendant misrepresented to the public, including the purchaser Plaintiff that the drug product was safe for its intended use when in fact it was not.

a.      This misrepresentation regarding safety involved material facts concerning the character or quality of the drug in question.

b.      The purchaser relied on the Defendants' representations in buying the drug as any normal purchaser would have justifiably been expected to be influenced in making the decision to buy the product.

c.      This misrepresentation was a producing cause of the occurrence in question and Plaintiffs' injuries and damages.

14

    d.      The Defendants are liable to the Plaintiff under the *Restatement (Second) of Torts* § 402B.

## C. NEGLIGENCE AND GROSS NEGLIGENCE

    44.     Defendants and their agents, servants, and employees, engaged in several acts and omissions constituting negligence and gross negligence. Such acts and omissions, among others, are as follows:

    a.      Failing to provide adequate warnings to physicians and their patients of the risk of serious injury, including but not limited to gallbladder complications and disease to people taking YAZ and/or Yasmin, and of precautionary measures required to avoid such risks. To the extent that Defendants provided such warnings and such warnings accompanied the units of YAZ and/or Yasmin disseminated to Plaintiff Cindy Whitfield, and/or her physicians, pharmacists or other health care providers and were approved by the United States Food and Drug Administration (FDA); then Plaintiff assert that Defendants, before or after pre-market approval or licensing Yasmin and/or YAZ, withheld from or misrepresented to the FDA required information that was material and relevant to the performance of Yasmin and/or YAZ and was causally related to Plaintiff's injury. Among other things, Defendants misrepresented to or actively concealed from the FDA, physicians, pharmacists, and other health care providers:

    (1)   That Yasmin and/or YAZ produced statistically significant increases in side effects, including hypertension, gallbladder complications and disease effects which could result in serious injury or death;

(2)      That there had been insufficient studies of the safety and efficacy of the product before it was released for the market, including inadequate studies to characterize adequately the risks that the product could cause gallbladder complications and disease;

(3)      That studies showed serious adverse risks from taking the product;

(4)      That the risk of gallbladder complications and disease was much higher than had been reported in the medical and scientific literature.

b.      Failing to investigate promptly and adequately reports of gallbladder complications and disease occurring in people taking Yasmin and/or YAZ, and failing to report promptly and adequately evidence concerning these dangerous side effects of the product to the FDA and prescribing physicians and other health care providers and/or to the general public.

c.      Failing to take other reasonable and necessary steps, relating to the research, testing and development of Yasmin and/or YAZ, so as to provide a reasonable assurance that the product would not result in gallbladder complications and disease.

45.      Defendants committed the acts and omissions described above with actual and subjective awareness that the product caused an elevated risk of gallbladder complications and disease.  This risk is extreme when one considers the prevalence of the product and the large numbers of users, the probability of potential harm to users, and the magnitude of the harm. Despite their awareness of this risk, Defendants proceeded to market, manufacture, and distribute the product with a conscious indifference to the rights, safety, or welfare of others including the Plaintiff Cindy Whitfield.

46.     The Defendants acts and omissions constituting negligence and gross negligence were each a proximate cause of the occurrence in question and the Plaintiff's injuries and damages.

47.     The Defendants, before or after pre-market approval or licensing of the product, withheld from or misrepresented to the United States Food and Drug Administration("FDA") required information that was material and relevant to the performance of the product and was causally related to the Plaintiff's injury.   Further the Defendants, before or after pre-market approval or licensing of the product, engaged in conduct that would constitute a violation of 18 U.S.C. § 201, and the conduct caused the warnings or instructions approved for the product by the FDA to be inadequate.   Therefore, the presumption of no liability set for in Tex. Civ. Prac. & Rem. Code § 82.007 is inapplicable in this case.

## VI.   DAMAGES

48.     The Defendants' defective product, misrepresentation, negligence, and gross negligence were legal causes of the occurrence in question and Plaintiff's injuries and damages. There are certain elements of damages that the Plaintiff is entitled to have the Court and Jury considers in determining the sum of money that, if paid now in cash, would fairly and reasonably compensate Plaintiff for her injuries.   Those elements of damages (both up to the time of trial and beyond) include the following:

a.      Plaintiff Cindy Whitfield's physical pain and suffering;

b.      Plaintiff Cindy Whitfield's mental anguish;

c.      The reasonable value of medical expenses that have been and will be necessarily incurred in the treatment of Plaintiff Cindy Whitfield's injuries;

d.      The damages resulting from the physical impairment of Plaintiff Cindy Whitfield including the resulting inability to perform and experience those tasks and services that she ordinarily would have been able to perform and experience;

f.      Plaintiff Cindy Whitfield's disfigurement; and

g.      Punitive damages from each Defendant for Plaintiff.

49.     Considering each of the foregoing elements of damages, both past and future, Plaintiff Cindy Whitfield has suffered damages in excess of $75,000.00, exclusive of interest and costs.    Plaintiff asserts her rights under the Seventh Amendment to the United States Constitution, and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.  Plaintiff tenders herewith the required fee.

## VII.  **PRAYER**

50.     WHEREFORE, PREMISES CONSIDERED, Plaintiff Cindy Whitfield prays that the Defendants be cited to appear and answer, and that Plaintiff recovers judgment against the Defendants for the damages described above; costs of Court; prejudgment interest at the legal rate on the appropriate elements of damages for the time periods permitted by law; post-judgment interest at the legal rate on the appropriate elements of damages for the time periods permitted by law; and all other relief, general or special, at law or in equity, to which she is entitled.

Respectfully submitted,

LAW OFFICES OF PRICE AINSWORTH, P.C.
48 East Avenue
Austin, Texas 78701-4320
Telephone:  (512) 474-6061
Facsimile:  (512) 472-9157
Email:  price@ainsworth-law.com

BY: _____
          Price Ainsworth
          State Bar No. 00950300

ATTORNEY FOR PLAINTIFF

**#3892P.001**